UNITED STATES of America,
Plaintiff-Appellee,

v.

William DREW, Defendant-Appellant.

No. 71-1220

Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Nov. 29, 1971.

Rehearing Denied Jan. 18, 1972.

* [1] Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

James L. Guilmartin, Miami, Fla., for defendant-appellant.

Robert W. Rust, U. S. Atty., Miami, Fla., Sidney M. Glazer, Frederick W. Read, III, U. S. Dept. of Justice, Washington, D. C., for plaintiff-appellee.

Before GEWIN, GOLDBERG and DYER, Circuit Judges.

GOLDBERG, Circuit Judge:

Appellant Drew was convicted of possessing an unregistered firearm and of possessing a firearm not identified by serial number. 26 U.S.C.A. §§ 5861(d) 5861(i), and 5871.[1] He appeals from the denial of his motion to suppress the firearm in question as evidence, contending that it was not seized under circumstances that would justify seizure without a warrant and that he did not voluntarily submit to a warrantless search and seizure. We affirm the denial of the motion to suppress.

Drew was stopped by two officers one evening for driving with only his parking lights on, in violation of a Miami traffic ordinance. Drew explained that he had rented the car and was not familiar with the workings of the lights. As the officers prepared to depart, one of them noticed a blue opaque plastic folder lying on the right front floorboard with what appeared to be the bulging outline of a pistol. The officers requested that Drew step outside his car and, after reading him the *Miranda* warnings, asked him if he knew the contents of the folder. Drew stated that he knew nothing regarding the folder

---

1. The firearm that was the subject of this conviction was a silencer, delineated as a firearm in 26 U.S.C.A. § 5845.

and suggested that it had been left by another user of the automobile. The officers then removed the folder from the car and discovered in it a silencer, two pistols, and a large switchblade knife. After noting that the silencer bore no serial number, as required by law, and after checking with headquarters and discovering that neither pistol was registered in Drew's name, the officers placed Drew under arrest and again read him the *Miranda* warnings. A further search immediately after the arrest uncovered a second large switchblade knife, which Drew admitted owning. The silencer, the pistols, and the knives were introduced into evidence at the trial, although Drew's indictment and conviction were only on the basis of the silencer.

■ There is some confusion in the record regarding Drew's response to an officer's request to open the folder. Drew claims that he did not voluntarily consent to the opening of the folder, and the officers claim that he did. We do not reach the consent issue, for we find that the evidence was admissible without consent as evidence in "plain view." Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067.

The Supreme Court recently delved once again into the realm of the "plain view" approach to the seizure of evidence. The Court summarized that realm of law as follows:

> "What the 'plain view' cases have in common is that the police officer in each of them had *a prior justification* for an intrusion in the course of which he came *inadvertently* across a piece of evidence incriminating the accused."

Coolidge v. N. H., 1970, 403 U.S. 443, 91 S.Ct. 2022, 2038, 29 L.Ed.2d 564, 583. [emphasis added]. While the burden of the government is always heavy when it urges any exception to the general requirement that searches and seizure must be predicated upon a warrant issued on probable cause, Coolidge v. N. H., *supra;* Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, we feel that the government has met its burden in this case.

It cannot be denied that the officers had a right to stop Drew to check on his car lights. Thus, the officers had clear "prior justification" for looking inside the automobile in order to talk to Drew. *See* Goodwin v. United States, 1965, 121 U.S.App.D.C. 9, 347 F.2d 793, cert. denied, 1965, 382 U.S. 920, 86 S.Ct. 298, 15 L.Ed.2d 234; Marshall v. United States, 5 Cir. 1970, 422 F.2d 185; Davis v. United States, 5 Cir. 1970, 423 F.2d 974, cert. denied, 400 U.S. 836; Ker v. California, 1963, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726; Harris v. United States, *supra.* Drew does not allege, and there is nothing in the record to indicate, that the officers had firearms rather than driving lights on their minds when they stopped Drew's automobile. Thus, the observation of the plastic case was "inadvertent." *See* Coolidge v. N. H., *supra;* Warden, Maryland Penitentiary v. Hayden, 1967, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782; Harris v. United States, *supra.* We find that the facts of this case fall within both *Coolidge* parameters of the "plain view" cases.

Drew argues, however, that the outline of a pistol through an opaque plastic folder is neither direct enough nor certain enough to bring the facts of this case within the purview of the "plain view" approach. In support of his argument, Drew points out that the folder had to be opened before the presence of a pistol could be determined with absolute certainty. In addition, he points to the testimony of one of the arresting officers that the officer could not discern the outline of a pistol within the folder when the folder was placed before him at the time of the trial.[2] We do not find Drew's argument convincing.

---

2. The officer's inability to discern a pistol outline in the folder at the time of the trial does not disturb our view of this case. Later testimony revealed that at the time of the arrest the folder also contained a folded newspaper and several

The fact that the "view" here was "indirect," in the sense that there was a piece of opaque plastic between the beholding eye of the officer and the beheld pistol, cannot operate as a matter of law to make the "view" any less "plain." It is clear that items can be discerned through opaque plastic, and the fact that one must pick up the plastic or open a folder made of opaque plastic in order to grasp the actual object does not operate to foreclose the "plain view" rule. Drew's question really involves not the directness of the "view," but its certainty. Drew contends that the officers were not absolutely certain that the outline they saw in the plastic was actually made by a pistol. The testimony of the officers is clear that they believed the outline to be that of a pistol, although, of course, they could not be absolutely certain. As the Supreme Court stated in *Coolidge:*

> "The problem with the 'plain view' doctrine has been to identify the circumstances in which plain view has *legal significance* rather than being simply the normal concomitant of any search, legal or illegal."

403 U.S. at 458, 91 S.Ct. at 2037, 29 L.Ed.2d at 582 [emphasis added]. The "plain view" approach would be appropriate "only where it is *immediately apparent* to the police that they have evidence before them." 403 U.S. at 459, 91 S.Ct. at 2038, 29 L.Ed.2d at 583 [emphasis added]. In our view the outline of the pistol in this case was evidence no less "apparent" as a matter of "legal significance" merely because the existence of the pistol was not *absolutely* certain. When two experienced officers observe what appears to them to be the outline of a deadly weapon through the bulge in an opaque plastic folder at night in a rented car, whose driver professes no knowledge of the folder, that observation is direct enough and certain enough to pass muster under the "plain view" approach to the Fourth Amendment.[3] The fact that the observation took place in a vehicle and at night made it reasonable for the officers to seize the folder at that time. *See* Chambers v. Maroney, *supra;* Marshall v. United States, *supra.* Having lawfully seized the opaque folder with the outline of the pistol, the police were entitled to open it and to seize its

---

pieces of cardboard, items that were absent in the in-court demonstration. The presence of those items would press the outline of the pistol more clearly against the side of the plastic. In addition, there was testimony that the plastic was responsive to the heat of the evening of the arrest, as contrasted with the air-conditioned morning of the trial; that too would operate to make the bulge outline more certain at the time of the arrest than it might have been in court. We find that there is substantial evidence in the record to support the trial court's conclusion that the outline of a pistol could be discerned through the opaque plastic holder.

3. Technically, evidence discovered in "plain view" is not the product of a search, and therefore not within the purview of the Fourth Amendment. See Marshall v. United States, *supra;* United States v. Barone, 2 Cir. 1964, 330 F.2d 543, cert. denied, 377 U.S. 1004, 84 S.Ct. 1940, 12 L.Ed.2d 1053; United States v. Davis *supra.* Even if we were to accept, *arguendo,* Drew's assertion that the observa-

tion and opening of the folder constituted a search, the set of circumstances that preceded and surrounded the observation and opening of the folder in this case constituted probable cause for a warrantless search of an automobile. The apparent outline of a deadly weapon in the automobile of a man who claimed to have no knowledge of the folder or of the weapon would constitute probable cause to believe that the folder might contain evidence of a crime. See Goodwin v. United States, *supra.* When an automobile has been stopped on the highway, the occupant is alerted and the automobile is mobile, and observed evidence might never be discovered again if a warrant were required prior to search and seizure. See Chambers v. Maroney, 1970, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419, reh. denied, 400 U.S. 856, 91 S.Ct. 23, 27 L.Ed.2d 94; Carroll v. United States, 1925, 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543, cited with approval in Preston v. United States, 1964, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777.

contents. *See* Harris v. United States, *supra*. Since the silencer falls within the purview of the "plain view" approach, the denial of the motion to suppress is affirmed.

Affirmed.