**P U B L I S H**

**UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

No. 94-40538
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

EDDIE LEE COOKS,

Defendant-Appellant.

**CONSOLIDATED WITH**

_____

No. 94-40685
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

versus

ARTIS CLEMMONS,

Defendant-Appellee.

Appeals from the United States District Court
for the Western District of Louisiana

(April 27, 1995)

Before POLITZ, Chief Judge, REAVLEY and BARKSDALE, Circuit Judges.

POLITZ, Chief Judge:

Complaining of an improper limitation of the cross-examination

of a government witness, Eddie Lee Cooks appeals the denial of a new trial following his convictions of conspiracy to distribute over 50 grams of cocaine base[1] and three substantive counts.[2]  The codefendant, Artis Clemmons, was convicted of the same conspiracy and one substantive count but was granted a new trial for the cited challenge and the government appeals.  Finding neither error nor abuse of discretion, we affirm.

### Background

In January 1992, Clay Murray was arrested in Texas for state drug offenses arising out of his possession of over 80 grams of cocaine.  Desirous of lenient treatment on these state charges and on any possible federal charges, he agreed to cooperate with state and federal law enforcement agencies in their investigations of illegal drug activities in California and in his native Louisiana, particularly in the Monroe area.

Upon being informed that Cooks, a longtime acquaintance, was under investigation, Murray contacted him and began negotiations to buy quantities of cocaine base.  On January 15, 1992, Murray was given money and a device to make an audio record of a purchase of approximately two ounces of "crack" from Cooks.  Murray immediately delivered the audio tape and drugs to the authorities and continued to assist in their investigation of Cooks.

A few days later Murray and Kendrick Van Buren, an undercover officer, went to Cooks' business place where Murray, out of the

---

[1] 21 U.S.C. §§ 841(a)(1), 846.

[2] 21 U.S.C. § 841(a)(1).

presence of Van Buren but recorded on audiotape, purchased from Cooks 1.5 ounces of crack. Two weeks later, in the presence of Van Buren but not "on wire," Murray and Cooks agreed to the sale of two additional ounces. On February 14, 1992, a "wired" Van Buren and Murray met with Cooks and Clemmons. Murray and Clemmons repaired to a bathroom and Murray returned with crack. The Clemmons/Murray meeting was neither recorded nor personally viewed by Van Buren.

Several months later Cooks and Clemmons were indicted, as aforestated. The government sought *in limine* to limit cross-examination of Murray regarding his prior arrests and drug use. The court ultimately ruled that Murray could be cross-examined about the circumstances and motivations surrounding his cooperation with the authorities as related to the Texas charges but the court declined to allow questioning on a subsequent Louisiana arrest for purse-snatching or on the stiff penalties Murray faced if convicted on either the Texas or Louisiana charges.

Following conviction by a jury on all counts Cooks and Clemmons both sought a new trial, contending that the court's limitation of their cross-examination of Murray about his prior problems with the law and the potential effect that record might have on his testimony impaired their right to a fair trial. The district court agreed, noting that a full airing of Murray's reason for cooperating with the authorities would have disclosed his motivation for self-preservation which, in turn, may have furnished a bias for his testimony. Having so ruled, the court then found

3

that the extensive evidence dehors Murray's testimony about Cooks' involvement made the restriction of Murray's cross-examination harmless as to Cooks. Cooks' motion for new trial was denied and the mandatory life sentence was imposed. Clemmons, however, was granted a new trial. Cooks and the government both timely appealed and we consolidated the cases for disposition.

## Analysis

Cooks maintains that there was insufficient evidence, aside from Murray's testimony, to secure his conviction and, as a consequence, he also should have received a new trial. The government counters that the district court properly limited cross-examination of Murray and that neither Cooks nor Clemmons should receive a new trial.

The ruling on a new trial motion is reviewed for abuse of discretion;[3] new trials are granted only upon demonstration of adverse effects on substantial rights of a defendant.[4] In the case at bar, the right involved was Cooks' and Clemmons' well-established[5] sixth amendment right to confront Murray to elicit any relevant information bearing on his bias, prejudice, or motive for testifying.[6]

Although a district court possesses "wide latitude . . . to

---

[3]**United States v. Dula**, 989 F.2d 772 (5th Cir.), <u>cert</u>. <u>denied</u>, _____ U.S. _____, 114 S.Ct. 172 (1993).

[4]**United States v. Logan**, 861 F.2d 859 (5th Cir. 1988).

[5]<u>See</u> **Davis v. Alaska**, 415 U.S. 308 (1974); **United States v. Tansley**, 986 F.2d 880 (5th Cir. 1993).

[6]**Delaware v. Van Arsdall**, 475 U.S. 673 (1986).

4

impose reasonable limits on cross examination,"[7] this "discretion is limited, however, by the requirements of the Sixth Amendment."[8] Cross-examination to expose a witness' motive for testifying is "always relevant as discrediting the witness and affecting the weight of his testimony,"[9] and "is especially important with respect to . . . witnesses who may have substantial reason to cooperate with the government."[10]  The importance of and need to safeguard this right is enhanced when, as here, the witness is crucial to the prosecution.[11]  The constitutional right is not violated, however, if "the jury ha[s] sufficient information to appraise the bias and motives of the witness."[12]

In the case at bar, although the jury was informed of Murray's status as a paid career criminal informant, and of his hopes for leniency on the Texas charges in exchange for his assistance in this investigation, the court's ruling prevented the airing of other important information pertinent to Murray's reliability, namely his effort to avoid the consequences of his own crimes, which, given their seriousness and his recidivism, might have been

---

[7]**Tansley**, 986 F.2d at 886.

[8]**United States v. Garcia**, 13 F.3d 1464, 1468 (11th Cir.), cert. denied, _____ U.S. _____, 114 S.Ct. 2723 (1994).

[9]**Davis**, 415 U.S. at 316.

[10]**United States v. Onori**, 535 F.2d 938, 945 (5th Cir. 1976).

[11]See **Gordon v. United States**, 344 U.S. 414 (1953).

[12]**Tansley**, 986 F.2d at 886.

5

very severe in this case.[13]  Given the obvious pressure on Murray that his cooperation be of value to the prosecution, there was considerable incentive for him to "slant, unconsciously or otherwise, his testimony in favor of or against a party."[14]  The jury should have been informed of all of the pertinent facts surrounding this motivation, and the district court correctly recognized that its earlier ruling limiting this line of questioning was error.

It is axiomatic, however, that such an error is actionable only if clearly prejudicial.[15]  The presence of harmful error in this context is determined based on a reviewing court's examination of both the overall strength of the prosecution's case and the circumstances surrounding the testimony, such as the extent of allowed cross-examination, the importance of the testimony to the government's case, and its corroboration or contradiction at trial.[16]

Although Murray's direct testimony was important to the government's case against Cooks, there was an abundance of other evidence to support the verdict.  The government introduced the

---

[13]If convicted of the Texas drug charges, Murray faced a possible 99-year sentence.  Tex. Health & Safety Code Ann. § 481.112(c) and (d).  If convicted on the Louisiana charge, as this was Murray's third offense he faced a possible 40-year sentence.  La. R.S. 14:65.1; 15:529.1.

[14]**United States v. Abel**, 469 U.S. 45, 52 (1984).

[15]**United States v. Restivo**, 8 F.3d 274 (5th Cir. 1993), cert. denied, _____ U.S. _____, 115 S.Ct. 54 (1994).

[16]**Van Arsdall.**

6

testimony of several FBI agents and state police officers who saw Murray enter Cooks' home and business and emerge with newly-acquired drugs.  Officer Van Buren testified that he heard Cooks plan drug sales to Murray.  The government introduced the audio recordings of Murray and Cooks that clearly supported Murray's testimony that he had purchased the drugs from Cooks, and that Cooks' main source of revenue was the distribution of illegal drugs.  Thus, any error in limiting Cooks' cross-examination of Murray was harmless, and the district court did not abuse its discretion in denying his motion for new trial.

The record also demonstrates that the district court was correct in noting that absent Murray's testimony, there was no direct evidence linking Clemmons to any of the drug transactions alleged in the indictment.  The recordings made of Clemmons fail to make even an inferential reference to the business of drug distribution, and no state or federal officer actually saw Clemmons engage in any drug transaction.  Given the absence of any direct evidence beyond Murray's testimony, and our "extreme[] reluctan[ce] to second guess, on the basis of a paper record, the decision of a trial judge that insufficient cumulative evidence exists to cure a trial error,"[17] we find no abuse of discretion in the district court's efforts to correct, by a new trial, its error which it found prejudicial.

Cooks, an African-American, next claims that unlike white defendants, he was selectively prosecuted in federal court instead

---

[17]**United States v. Arroyo**, 805 F.2d 589, 599 (5th Cir. 1986).

of in state court because of a desire to inflict the stiffer federal penalty for distribution of cocaine base, and that the district court erred in denying his motion for dismissal on this basis. Cooks also contends that the court should have granted his motions for discovery of government records relating to similar prosecutions, for funds to secure a criminologist to assist in proving the above claim, and for an evidentiary hearing.

Although the government has great discretion in the prosecutorial decision, the exercise of this discretion cannot violate the Constitution's equal protection guarantee.[18] In order to prevail on his selective prosecution claim, Cooks must show that other similarly situated offenders were not prosecuted in federal court[19] and that he was prosecuted there because he was an African-American.[20]

In support of his claim Cooks invites our attention to a report noting that, nationally, minority arrests for drug offenses have increased tenfold in recent years. He also notes the existence of statistics reflecting that the overwhelming majority of those arrested for possession of crack are African-American. We agree with the district court that this data fails to satisfy the first prong of the selective prosecution inquiry; it does not

---

[18]**Wayte v. United States**, 470 U.S. 598 (1985); **United States v. Johnson**, 577 F.2d 1304 (5th Cir. 1978).

[19]**United States v. Ramirez**, 765 F.2d 438 (5th Cir. 1985), <u>cert</u>. <u>denied</u>, 474 U.S. 1063 (1986).

[20]**United States v. Sparks**, 2 F.3d 574 (5th Cir. 1993), <u>cert</u>. <u>denied</u>, _____ U.S. _____, 114 S.Ct. 899 (1994).

establish that white defendants committing this offense were prosecuted in state rather than federal court. Further, Cooks offers no evidence to indicate any discriminatory *animus* present in this prosecution; consequently, Cooks fails to carry the "heavy burden"[21] of establishing invidious selective prosecution. Cooks' inability to make even a colorable claim of selective prosecution accordingly bars his related requests for discovery,[22] funds for a criminologist,[23] and an evidentiary hearing.[24]

Cooks next claims that as the majority of prosecutions for possession of cocaine base involve African-Americans, the stiffer penalties for offenses involving cocaine base violate the equal protection provision. We need not tarry long here; we have ruled to the contrary.[25]

Next, Cooks argues that his sentence is constitutionally excessive and thereby violative of the eighth amendment bar to cruel and unusual punishment. Given the absence of any eighth

---

[21]**Sparks**, 2 F.3d at 580.

[22]See **United States v. Hintzman**, 806 F.2d 840 (8th Cir. 1986) (no abuse of discretion by denial of discovery in absence of *prima facie* case of selective prosecution).

[23]See **United States v. Williams**, 998 F.2d 258 (5th Cir. 1993), cert. denied, _____ U.S. _____, 114 S.Ct. 940 (1994) (no abuse of discretion in refusal to fund expert pursuant to 18 U.S.C. § 3006A in absence of some factual basis in support of claim).

[24]See **United States v. Jennings**, 724 F.2d 436 (5th Cir.), cert. denied, 467 U.S. 1227 (1984) (no abuse of discretion in denying evidentiary hearing on selective prosecution in absence of *prima facie* case of selective prosecution).

[25]See **United States v. Watson**, 953 F.2d 895 (5th Cir.), cert. denied, _____ U.S. _____, 112 S.Ct. 1989 (1992); **United States v. Galloway**, 951 F.2d 64 (5th Cir. 1992).

amendment proportionality requirement,[26] Cooks' reliance thereon is misplacaed.  We do not question the wisdom of Congress in its determination that the protection of society warrants the imposing of a sentence of life imprisonment on career narcotics distribution offenders.

Finally, Cooks posits that the stiff sentence he received as a career narcotics offender stems from a vindictive exercise of the government's discretionary authority to seek a sentence enhancement.  Following Cooks' withdrawal of a previous guilty plea that would have waived any enhancement the government, under 21 U.S.C. §§ 841(b)(1)(A) and 851, gave notice of two prior narcotics convictions which subjected Cooks to the mandatory term of life imprisonment.  As there is no presumption of prosecutorial vindictiveness attendant in the exercise of admittedly discretionary actions,[27] Cooks' failure to offer any tangible evidence in support of his vindictiveness claim dooms it to failure.[28]

Cooks' remaining claims are without merit.  The rulings of the district court are AFFIRMED in all respects as relates to both Cooks and Clemmons.

---

[26]See **Harmelin v. Michigan**, 501 U.S. 957 (1991).  See also **United States v. Willis**, 956 F.2d 248 (11th Cir. 1992).

[27]**United States v. Goodwin**, 457 U.S. 368 (1982); **Bordenkircher v. Hayes**, 434 U.S. 357 (1978).

[28]See **United States v. Molina-Iguado**, 894 F.2d 1452 (5th Cir.), cert. denied, 498 U.S. 831 (1990).