**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 96-10297
Summary Calendar
_____


UNITED STATES OF AMERICA,

                              Plaintiff-Appellee,

          VERSUS

          MICHAEL WAYNE ROUTE,

                              Defendant-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Texas
_____

January 13, 1997

Before SMITH, DUHÉ, and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:


     Michael Route appeals his conviction of thirteen counts of
bank fraud in violation of 18 U.S.C. § 1344.  Finding no error, we
affirm.


                              I.

     Route was charged with participating in a scheme to defraud
various businesses and financial institutions.  Route and Eddie
Crossley conspired to draft checks payable in the name of Paul

Beaty, a fictitious individual in whose name Route and Crossley had obtained a Texas driver's license, which checks were then given to Marvin Fullwood. Fullwood, having obtained a bank account in Beaty's name, would then cash the checks and give a certain percentage of the proceeds to Route and Crossley.

After Crossley and Fullwood cooperated with authorities in exchange for leniency, the government proceeded to trial against Route. A jury convicted Route on all thirteen counts, and the court sentenced him to thirteen concurrent ninety-six-month terms of imprisonment and thirteen concurrent five-year terms of supervised release, restitution in the amount of $74,490, and a special assessment of $650.

II.

A.

Route contends first that the district court erred in failing to grant his pretrial motion to suppress evidence seized during the execution of an arrest warrant at his residence. We review the district court's factual findings for clear error and its conclusions of law *de novo*. *See United States v. Rico*, 51 F.3d 495 (5th Cir.), *cert. denied*, 116 S. Ct. 220 (1995).

It is uncontested that the police obtained a valid arrest warrant for both Route and Crossley to be executed at Route's

residence.[1]  When the police arrived at the residence, they found Route backing his car out of the driveway and arrested him immediately.  Route testified at the suppression hearing that, after he refused to consent to a search of his home, Detective Faber took the house keys from his pocket and proceeded to enter the house.

While in the house, Faber observed computer equipment and other items that he believed had been used in the commission of the bank fraud.  After receiving a search warrant based in large part upon the observations made during his search of the house, Faber returned to Route's house and seized the computer equipment and other accessories.

Faber testified at the suppression hearing that, after Route had refused to consent to a house search and after Route insisted that he did not know of Crossley's whereabouts, Faber proceeded to walk around the perimeter of the house in search of Crossley. According to Faber, as he was walking around the house, he heard the television inside the residence and thus suspected that Crossley might be inside.  After Route again refused permission to search the house for Crossley, Faber entered the house, whereupon

_____

[1] Although we use the term "Route's residence," we note that the police had obtained sufficient information indicating that Crossley also resided there. Among the items the police had identified as indicating Crossley's residence at Route's house are (1) Crossley's credit card applications listing 1520 Mims (Route's address) as his mailing address; (2) an electric and water bill for 1520 Mims in Crossley's name; (3) verification from the Postal Inspector that Crossley was receiving mail at 1520 Mims; and (4) Crossley's car registration listing 1520 Mims as his address.  In any event, Route does not contest that Crossley was in fact living at his house.

he did not find Crossley but did happen upon the computer equipment and other criminal accessories.

A valid arrest warrant carries with it the implicit but limited authority to enter the residence of the person named in the warrant in order to execute the warrant, where there is "reason to believe" that the suspect is within.  *See Payton v. New York*, 445 U.S. 573, 603 (1980); *United States v. Woods*, 560 F.2d 660, 665 (5th Cir. 1977), *cert. denied*, 435 U.S. 906 (1978).  As distinct from the "probable cause" standard that governs the initial issuance of the arrest warrant and that must be determined by a magistrate, we have defined previously the "reason to believe" standard to "'allow[] the officer, who has already been to the magistrate to secure an arrest warrant, to determine that the suspect is probably within certain premises without an additional trip to the magistrate and without exigent circumstances.'" *Woods*, 560 F.2d at 665 (quoting *United States v. Cravero*, 545 F.2d 406, 421 (5th Cir. 1976), *cert. denied*, 430 U.S. 983 (1977)).[2]

All but one of the other circuits that have considered the question are in accord, relying upon the "reasonable belief" standard as opposed to a probable cause standard.[3]  To the extent

---

[2] Although *Woods* pre-dates *Payton*, the *Woods* standard is fully consistent with Payton and, as such, we adhere to its articulation of the "reasonable belief" test.

[3] *See, e.g.*, *United States v. Risse*, 83 F.3d 212, 216 (8th Cir. 1996) ("[T]he officers' assessment need not in fact be correct; rather, they need only 'reasonably believe' that the suspect resides at the dwelling to be searched and is currently
(continued...)

4

that this court has not already done so in *Woods*, we adopt today the "reasonable belief" standard of the Second, Third, Eighth, and Eleventh Circuits.

There is no clear error in the district court's determination that Faber had a reasonable belief that Crossley resided at 1520 Mims and was within the residence at the time of entry. As noted above, Faber had confirmed via Crossley's credit card applications, water and electricity bills, car registration, and receipt of mail that Crossley at least was representing to others that he was residing at 1520 Mims. Whether Crossley was in fact residing at 1520 Mims, which appears to have been the case, is irrelevant to our conclusion that Faber had done sufficient due diligence to form a reasonable belief of Crossley's residence there.

Faber also testified at the suppression hearing that when he arrived at 1520 Mims, although Route was leaving the residence, Faber could hear the television inside the house and noticed another vehicle remaining in the driveway. In light of Faber's

---

[3](...continued)
present at the dwelling."); *United States v. Lauter*, 57 F.3d 212, 215 (2nd Cir. 1995) ("[T]he proper inquiry is whether there is a *reasonable belief* that the suspect resides at the place to be entered . . . and whether the officers have reason to believe that the suspect is present."); *United States v. Edmonds*, 52 F.3d 1236, 1248 (3d Cir. 1995) ("[While the information available to the agents clearly did not exclude the possibility that Carlton Love was not in the apartment, the agents had reasonable grounds for concluding that he was there."), *vacated in part on other grounds*, 52 F.3d at 1251; *United States v. Magluta*, 44 F.3d 1530, 1535 (11th Cir.) ("[T]he facts and circumstances within the knowledge of the law enforcement agents, when viewed in the totality, must warrant a reasonable belief that the location to be searched is the suspect's dwelling, and that the suspect is within the residence at the time of entry."), *cert. denied*, 116 S. Ct. 189 (1995). *But cf. United States v. Harper*, 928 F.2d 894, 896 (9th Cir. 1991) ("[T]he police may enter a home with an arrest warrant only if they have probable cause to believe the person named in the warrant resides there.").

reasonable belief that Crossley resided at 1520 Mims, we agree with the district court that Faber's observations were sufficient to form a reasonable belief that Crossley was in fact in the residence at the time of the warrant.

B.

Route next argues that the district court erred in admitting evidence of other fraudulent activity under FED. R. EVID. 404(b). The government had sought to introduce evidence of Route's 1980 conviction for possession of a stolen check and his 1990 conviction for bank fraud, for which conviction he was on supervised release at the time of his arrest for the present charges. The district court excluded the 1980 conviction for staleness but allowed the government to introduce the 1990 conviction. To prevent the jury from hearing of the conviction, Route agreed to stipulate that in 1989 he and another individual had devised and executed a scheme to defraud a financial institution by opening several bank accounts using false social security numbers and by depositing stolen checks into the accounts and then withdrawing the cash.

We review the admission of extrinsic acts evidence for abuse of discretion. *See United States v. Broussard*, 80 F.3d 1025, 1039 (5th Cir.), *cert. denied*, 117 S. Ct. 264 (1996). We use a two-part test to determine whether evidence is admissible properly under 404(b): (1) whether the evidence is relevant to an issue other than

the defendant's character and (2) whether the evidence possesses probative value that is not outweighed substantially by the danger of unfair prejudice and is otherwise admissible under Rule 403. *See United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978), *cert. denied*, 440 U.S. 920 (1979).

We agree with the district court that evidence of the 1990 conviction was relevant to an issue other than Route's characterSSnamely, intent and knowledge. In the instant trial, Route defended himself by arguing that, although blank checks identical to those used in the scheme were found in his home and although the printer matching the print found on the tainted checks was also found there, Crossley had used his home and computer equipment without his knowledge. Evidence of a similar scheme in which Route opened bank accounts under false names and deposited stolen checks in the accounts (within five years of the instant scheme) was indeed relevant to Route's instant intent and knowledge.

Furthermore, the probative value of Route's extrinsic acts evidence was not outweighed substantially by the danger of unfair prejudice. Notwithstanding Route's protestations to the contrary, the events were neither too remote nor too dissimilar. *See, e.g.*, *Broussard*, 80 F.3d at 1040 (noting that rule 404 does not bar *per se* the introduction of a ten-year-old conviction). Moreover, any prejudice Route suffered was mitigated by the admission of his stipulated involvement in the scheme (as opposed to his actual

7

conviction) and by the limiting instruction to the jury regarding the proof of other criminal conduct.  *See, e.g.*, *United States v. Devine*, 934 F.2d 1325, 1346 (5th Cir. 1991).

## C.

Route next contends that the district court erred by terminating prematurely his cross-examination of Fullwood, the chief government witness.  On cross-examination, Route asked Fullwood whether Crossley had hid in Fullwood's dormitory room for the two days following Route's arrest.  The district court noted correctly that the question was beyond the scope of Fullwood's direct examination and instructed Route to restrict properly his examination.

A district court possesses wide latitude to impose reasonable limits on cross examination, subject to the Confrontation Clause of the Sixth Amendment.  *See United States v. Cooks*, 52 F.3d 101, 103 (5th Cir. 1995).  We review the restriction of the scope of cross-examination for abuse of discretion.  *See United States v. Stewart*, 93 F.3d 189, 193 (5th Cir. 1996).  Even where the district court abuses its discretion, we will not order a new trial unless the harm is plainly prejudicial.  *See Cooks*, 52 F.3d at 104.

The district court did not abuse its discretion.  The court correctly instructed Route that his cross-examination of Fullwood was limited by the scope of the government's direct examination,

permitted Route to continue his questioning consistent with this admonition, and ended Route's cross-examination only after Route indicated his inability to abide by the court's instructions.

Even assuming that the court's ruling was error, it was harmless. *See Cooks*, 52 F.3d at 104. Route intended to ask Fullwood whether, after Route was arrested, Crossley hid for two days in Fullwood's dormitory room. According to Route, "[t]he fact that Crossley and Fullwood were so intimately involved with each other at the time of the offenses does tend to discount Route's involvement and to refute Fullwood's testimony that Route was involved." Not only would such testimony have been duplicative——Crossley had testified on direct examination that he had in fact hid in Fullwood's dormitory room——but we are not convinced of the validity of Route's ruminations that "[t]here is even a possibility that, under cross examination, Fullwood would have conceded that Route was not involved in the offenses."

III.

Route next contests his sentence. First, he argues that the district court, as a basis for upward departure, considered improperly the three theft offenses that he had committed when he was eighteen to twenty-one years old. We review for abuse of discretion the decision to depart upward. *See United States v. Ashburn*, 38 F.3d 803, 807 (5th Cir. 1994) (en banc), *cert. denied*,

9

115 S. Ct. 1969 (1995). The district court has wide discretion in determining the extent of the departure, and we will affirm an upward departure if (1) the court gives acceptable reasons for departing and (2) the extent of the departure is reasonable. *See United States v. Hawkins*, 87 F.3d 722, 728 (5th Cir.), *cert. denied*, 117 S. Ct. 408 (1996).

Route filed written objections to the presentence report ("PSR") and argued orally that the offensesSStwo of the which did not receive any criminal history pointsSSwere too remote in time and too dissimilar to warrant consideration. The court noted Route's objections but concluded that his criminal history category of 6 did not reflect adequately the seriousness of his past conduct nor the likelihood that he would commit future crimes. As such, the court adopted the PSR's recommendation that Route receive an upward adjustment of one level. Because the court gave acceptable reasons for its decision, and because the extent of the departure was reasonable, we do not find any abuse of discretion.

Second, Route contests the PSR's conclusions that the extent of his check fraud scheme totaled $193,696.34, substantially greater than the $24,129.46 for which he was convicted. We review the PSR's factual conclusions for clear error. *See United States v. Mir*, 919 F.2d 940, 943 (5th Cir. 1990). Not only was the district court's consideration of the PSR's factual findings reasonable, but Route did not offer any rebuttal evidence to refute

10

the factual findings.  Thus, the court was free to adopt the facts in the PSR without further inquiry.  *See United States v. Mueller*, 902 F.2d 336, 346 (5th Cir. 1990).

### IV.

Finally, Route claims that he is entitled to a new trial because of ineffective assistance of counsel.  Generally, we will not review on direct appeal an ineffective assistance claim that the defendant has failed to present to the district court; we will entertain such claims only in those rare cases where the record allows us to evaluate fairly the merits of the claim.  *See United States v. Navejar*, 963 F.2d 732, 735 (5th Cir. 1992).  This is not one of those rare cases.  As such, we decline to address the matter on direct appeal.

### V.

Route also challenges this court's denial of his motion for substitute counsel on appeal.  We will not substitute appointed counsel except in the event of incompatibility between attorney and client or other most pressing circumstances.  *See United States v. Trevino*, 992 F.2d 64 (5th Cir. 1993).  We agree with this court's prior adjudication of this issue that such circumstances are not present in the instant case.

AFFIRMED.