MAHONEY et al. v. MAHONEY et al.

No. 4700.

Court of Civil Appeals of Texas. Amarillo.

Feb. 5, 1937.

Rehearing Denied March 8, 1937.

Crenshaw & Dupree, of Lubbock, for appellants R. R. Rhodes and Magnolia Petroleum Co.

Bean & Bean, of Lubbock, and R. P. Moreland, of Plains, for appellants H. O. Mahoney et ux.

Stubbeman, McRae & Sealy, of Midland, for appellants Sadie O'Dowd, Marthy V. McLendon, and Honolulu Oil Corp.

Stone & Guleke, of Amarillo, and Whitaker & Perkins, of Midland, for appellees.

MARTIN, Justice.

Appellee Eula Mahoney, for herself and as next friend and guardian of the persons and estates of her two minor children, filed this suit for four sections of land in Yoakum county, against H. O. Mahoney, Mrs. B. O. Mahoney, and many others. Those mentioned are the principal actors and the others will be named in the course of the opinion if necessary. The first count of appellee's petition was in the form of trespass to try title; the second alleged a gift of said land to J. F. Mahoney, deceased husband of appellee, from H. O. and Mrs. B. O. Mahoney, the father and mother respectively of said J. F. Mahoney. Her petition after alleging that the above parties delivered to their son, J. F. Mahoney, a warranty deed to said land in June, 1916, before his marriage to appellee, proceeds:

"That said deed recited a consideration of $17,920.00 to be paid and secured to be paid by J. F. Mahoney as follows: $10.00 in cash, receipt being then and there acknowledged, and one note of even date with said deed in the sum of $17,910.00 due and payable five years after the date with interest thereon at the rate of eight per cent per annum. * * *

"Plaintiffs say that in reality and fact, said property was conveyed to the said J. F. Mahoney who was the son of the defendants, H. O. Mahoney and Mrs. B. O. Mahoney, as a gift to the said grantee, J. F. Mahoney, and it was understood and agreed by and between the grantors and grantee that the portion of said deed reciting execution of a lien, or agreement to pay the said sum of $17,910.00 was never to become effective and were a mere sham and

pretense inserted in said deed by the grantors for the purpose of protecting the grantee from the execution of any bond. * * *

"Plaintiffs say that if said indebtedness ever was a valid obligation, which is not admitted but denied, and in the alternative, if it was not cancelled, surrendered or released, as hereinabove alleged, which is not admitted but denied, then they say said indebtedness has long since been paid, or, in the alternative, if said obligation and indebtedness has not been paid, that same is long since barred by the statutes of limitation."

For the present, this sufficiently presents the case as pleaded by appellee. The answers of appellants, separately filed, contained a general denial, and, among others, the following allegations:

"That said lands were conveyed by this defendant and H. O. Mahoney to J. F. Mahoney, as alleged by plaintiffs, and as consideration therefor the said J. F. Mahoney did execute and deliver to the said H. O. Mahoney or to this defendant, or to both of them, a vendor's lien note for $17,910.00, dated June 7, 1916, and due and payable five years after date with interest at the rate of eight per cent per annum from its date payable annually, and the vendor's lien was retained in the deed and in said note against the land there conveyed, being Sections 742, 744, 806 and 808, in Block D, in Yoakum County, Texas. That said note became and was a valid obligation. That the deed made by this defendant and H. O. Mahoney to the said J. F. Mahoney and the notes above mentioned which was executed by the said J. F. Mahoney, constituted an executory contract of sale of said land, and the superior title of the land remained in the said H. O. Mahoney. * * *

"That thereafter J. F. Mahoney died intestate, leaving his wife, Eula Mahoney, and two children, being the other plaintiffs. * * *

"This defendant further shows that the aforesaid note was never paid. That after the death of said J. F. Mahoney, H. O. Mahoney, acting for himself and this defendant and for the community estate of the two, rescinded the executory contract of sale aforesaid, and took possession of said lands and surrendered and delivered to Eula Mahoney the vendor's lien note, and accepted from said Eula Mahoney, a deed for said lands. That by reason thereof, the executory contract of sale was rescinded."

Some of the essential facts of this case are:

In 1916 J. F. Mahoney, then a single man, received the deed above mentioned from his father and mother, two of the appellants herein. Thereafter, in August, 1924, J. F. Mahoney died, leaving as his survivors the appellees herein. Neither the interest nor any part of the principal of said note had been then, or was ever thereafter paid. In September, 1924, Eula Mahoney, as "administratrix of the estate and community survivor of my husband, J. F. Mahoney, deceased," conveyed the land in controversy to H. O. Mahoney. This conveyance recited the cancellation of the note above mentioned. The property being the separate estate of J. F. Mahoney, such deed plainly did not convey the interest of the minors mentioned above, to the lands involved. H. O. Mahoney went into immediate possession of said land, made conveyances of same, and thereafter paid all taxes thereon.

In support of the above allegations of a gift, appellee introduced proof of statements made by both Mr. and Mrs. Mahoney in a suit between themselves in California, the exact nature of which appears below. This was all the evidence introduced of sufficient cogency to support said pleadings. Appellants were in possession of said lands at the time of and long prior to the trial, claiming same under a rescission of the said executory contract of sale by H. O. Mahoney, who retained in said deed and held the superior title on the face of the record.

The trial court peremptorily instructed a verdict for appellees, and judgment for them was entered in accordance therewith.

The record as a whole suggests that such verdict was directed primarily upon the theory that the evidence conclusively showed a gift of said lands to the said J. F. Mahoney.

Questions relating to this theory are in our opinion the controlling ones, and others will be only briefly noticed, or not at all.

The trial court, over appellants' objections that same was immaterial, irrelevant, prejudicial, and was an attempt to vary and contradict the record title and varied the contractual considerations recited in the deed to the land in controversy, admitted the following statements of H. O. Mahoney, given in evidence by him in the trial of a case in California between him and his wife:

"Q. Now the four sections in Yoakum County deeded to your son is what was deeded to Jack? A. Yes.

"Q. And that is the property you say should go to his wife, Eula Mahoney? A. Well, allow me to relate the circumstances. She and me signed a deed to Jack; it was intended as a gift but to protect the boy, fearing he would go on somebody's bond, I took the vendor's lien note on it to protect the boy so he would not lose the land."

We infer that the nature of the suit between them was a maintenance suit brought in the state of California by the wife against her husband, H. O. Mahoney, both appellants herein. The court likewise admitted, over the same objections, similar statements of Mrs. Mahoney.

The pleadings and exact issues in the California case were not attempted to be shown, nor what, if any, judgment was rendered therein. Appellee Eula Mahoney was not a party thereto. Such testimony was not shown to have been known to or acted on by her or any one else. She was neither misled nor injured thereby. Estoppel based upon this was not pleaded. Mrs. B. O. Mahoney could not have been misled.

We are of the opinion, first, that such testimony constituted a pointed contradiction of the recitals in the deed from H. O. Mahoney and wife to J. F. Mahoney, and was an attempt to prove by parol another and different contract from that evidenced by the deed under which appellees claim title. If mistaken in this, it is clear to us that such statements were not conclusive of the character of the title, since Mahoney and wife, by their testimony, contradicted same on the trial, and in any event a peremptory instruction for appellees was not justified, and that such contradictions presented at most a jury question.

We here reproduce quotations from authorities which seem to us to require such holding:

"The general rule respecting deeds was long ago stated by Lord Thurlow as follows: 'The rule is perfectly clear that, where a deed is in writing, it will admit of no contract that is not part of the deed; whether it adds to or deducts from the contract, it is impossible to introduce it on parol evidence.' A deed is the highest evidence of a contract, and cannot, in the absence of fraud or mistake, be contradicted or varied by parol proof, either at law or in equity. * * *

"All prior verbal understandings are merged in the deed, which becomes operative according to its terms, unless such covenants have been omitted from the deed through fraud or mistake, or in reality are independent and collateral agreements, separate and distinct from the deed. * * *

"And it may be expressed as a rule of wide application that parol or extrinsic evidence of an agreement that the maker of a note should incur no liability thereon, or that it would never have to be paid, is inadmissible." Jones Commentaries on Evidence (2d Ed.) Vol. 4, § 1618, pp. 2958, 2961, 3003.

"The case is before us upon a single assignment which is, in substance, that the court erred in peremptorily instructing a verdict in favor of the defendant Wagner and against the defendants (the Pridgens and the Butlers) because the uncontradicted testimony shows that the Pridgens placed the title to their property in the name of Wagner for the purpose of securing said Wagner in certain transactions, and that after certain adjustments had been made Wagner was to reconvey the property to the Pridgens. * * *

"The attack here is clearly an effort to impeach, contradict, and vary the plain unambiguous terms of the note and deed of conveyance, contractual in their nature, and by no sort of leniency can it be construed to be a mere explanation of the true consideration. * * *

"These stipulations are not mere recitations capable of being contradicted, but are unequivocal and contractual in their nature. No effort is made to avoid the contract for any vice rendering it voidable." Pridgen v. Furnish (Tex.Com.App.) 23 S.W.(2d) 307. See, also, the following authorities: McMurry v. Mercer (Tex.Civ.App.) 73 S. W.(2d) 1087; McKivett v. McKivett (Tex. Com.App.) 70 S.W.(2d) 694; Null v. De Young (Tex.Civ.App.) 71 S.W.(2d) 335; Guggenheim v. Dallas Plumbing Co. (Tex. Com.App.) 59 S.W.(2d) 105; Kahn v. Kahn, 94 Tex. 114, 58 S.W. 825.

"It is well established that a position assumed by a party in a former judicial proceeding will not estop him, or privies in estate, from taking an inconsistent position in a new proceeding, unless the new action is between the same parties. The rule is thus stated by the author of Corpus Juris, vol. 21, p. 1229, § 233: 'In order to work an estoppel, the position assumed in the former trial must have been successfully maintain-

ed. In a proceeding terminating in a judgment, the position must be clearly inconsistent, the parties must be the same, and the same questions must be involved.' ·

"Ruling Case Law, vol. 10, p. 702, gives this statement of the rule: 'It may be laid down as a general rule that a party will not be allowed in a subsequent judicial proceeding to take a position in conflict with a position taken by him in a former judicial proceeding, where the later position is to the prejudice of the adverse party, and the parties and the question involved are the same. * * * But, ex vi termini, the rule underlying these propositions does not apply to suits in which the issues and the parties are not the same, not to a position not precisely that taken on the prior proceedings.'

"In Heard v. Vineyard [Tex.Com.App.] 212 S.W. 489, 494, the rule as above defined was applied by the Commission of Appeals, as is revealed by the following quotation from the opinion: 'Defendants stress the proposition that the Vineyards, having recovered in the Brundrett Case ([Vineyard v. Brundrett] 17 Tex.Civ.App. 147, 42 S.W. 232) upon the theory that James B. Wells, Sr., and consequently Brundrett, never had title to the 11⁄24 interest therein, and herein involved, are estopped to urge in this case the entirely contrary theory that Wells did have a title which passed to Brundrett through the executor's sale and vested in Lillian Vineyard through her judgment against Brundrett. Such an estoppel can only be urged in favor of the parties to that suit. Defendants not being parties to the suit of Vineyard v. Brundrett, plaintiffs are in no manner estopped to assert another and contrary theory upon which to base a recovery, which in this case is but an adoption of defendants' theory.'" Permian Oil Co. v. Smith (Tex.Sup.) 73 S.W.(2d) 490, at pages 503, 504.

"The next ground of complaint against the decree of the circuit court is that the court did not hold the plaintiffs estopped from asserting title to the fund in controversy by the fact that they each testified in the suit of Peck against the United States, in which the fund was recovered, that he had no interest, direct or indirect, in the claim of Peck, except that he held one of the notes or memoranda made by Peck, a copy of one of which has already been given.

"It must be conceded that this testimony was evasive and disingenuous, but it was not false. But admitting that the testimony was untrue, it is difficult to see how any estoppel is raised which the defendant can set up against a recovery in this case by the plaintiffs. An equitable estoppel is raised when there is some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to a constructive fraud, by which another has been misled to his injury. Brant v. Va. Coal & Iron Co., 93 U.S. 326 [23 L.Ed. 927]. If any estoppel could be set up in this case by reason of the testimony of the plaintiffs, it would be one in favor of the United States, who alone could have been injured by that testimony." Hobbs v. McLean, 117 U.S. 567, 6 S.Ct. 870, 876, 29 L.Ed. 945.

"A party to an action is not concluded by an admission made by him or by one whose admissions affect him in the course of another action, but such admission may be explained or contradicted." 22 C.J. p. 423, § 23.

"Nor is a judicial admission made by a party to a suit conclusive against him in a subsequent suit against him by a stranger." Ruling Case Law, p. 703, § 29, Vol. 10.

"Defendant argues that plaintiff's conduct in failing to deny or explain such statements amounts to an admission that he made them. We need not discuss that proposition. If he made them, it was the duty of the jury to give them just weight in settling the questions of fact involved in the cause; but they were by no means conclusive of the fact alleged to have been admitted by them. Cafferatta v. Cafferatta, 23 Mo. 235; Sheperd v. Transit Co., 189 Mo. 362, 87 S.W. 1007." Dudley v. Wabash R. Co., 167 Mo.App. 647, 150 S.W. 737, at page 741.

"A party may also prove the falsity of an admission made by him either orally or in writing." 22 C.J. p. 420.

"When no element of estoppel exists an extra-judicial admission is not conclusive upon the party making it or to whom it is attributable." 22 C.J. p. 417.

"'A "judicial admission" is a waiver of proof.' Where there are two suits between the same parties on different causes of action, the pleadings in the first suit are admissible as evidence in the second suit, but are not conclusive. Commonwealth v. Monongahela Bridge Co., 216 Pa. 108, 64 A. 909, 912, 8 Ann.Cas. 1073.''

Words and Phrases, Second Series, Vol. 2, p. 1262.

"* * * Mere conflicts or contradictions do not justify us in disregarding the testimony of a witness given in support of an issue. Wonderful Workers of the World v. Woods (Tex.Civ.App.) 297 S.W. 232; El Paso Street Ry. Co. v. Talamantes (Tex.Civ.App.) 40 S.W. 228." Daggett v. Corn (Tex.Civ.App.) 54 S.W.(2d) 1098, at page 1099.

■ The deed in question is not attacked as a whole upon equitable grounds. Indeed, appellees claim title under it as a valid conveyance. They seek to show by parol evidence that its contractual recitals are false. The quoted evidence was no more than an admission against interest, introducible in a proper case, but not where its effect is to abrogate the pointed, unambiguous terms of a written conveyance and to prove primarily, not in impeachment, a fact such as the above. The court undoubtedly thought such evidence estopped the Mahoneys from disputing its effect on the trial of this case, and gave a peremptory instruction. Both these matters constitute in our opinion reversible error.

We now turn to a brief consideration of other theories, which are claimed to support the court's judgment.

We gravely doubt if any "trust" was ever sufficiently proven. We do not doubt that the record clearly shows an issue exists as to this, even if we admit the appellees by proper evidence made a prima facie case of property held in trust. Appellants, the Mahoneys, pointedly contradicted by their evidence this theory.

■ There is yet another and plausible theory of recovery. If there was no gift of the land in question, and there existed no right of rescission on the part of B. O. Mahoney, the record title to this property is still in appellees. The right of rescission may depend upon the equities of the case, evidence of which is not as clear as it should be. This phase does not appear to have been fully developed. We do not discuss this in detail because in no event could a vendee sue and recover lands from his vendor, holder of the superior title and in possession, claiming same by virtue of a rescission of an executory contract of sale, and at the same time refuse to pay the unpaid purchase money. Not a cent had ever been paid on either the principal or interest of the purchase-money note described in the deed above. H. O. Mahoney and his vendees were in possession of said lands and had been for some years prior to this suit. The trial court therefore could not give judgment to appellees for title and possession as was done, without requiring the payment of said indebtedness. This was not even tendered into court by appellees. Boddeker v. Olschewske (Tex.Com. App.) 94 S.W.(2d) 730; Bunn v. City of Laredo (Tex.Com.App.) 245 S.W. 426; Barker v. Temple Lumber Co., 120 Tex. 244, 37 S.W.(2d) 721; Church v. Cocke, 120 Tex. 262, 37 S.W.(2d) 723.

■ Many of the appellants held title through or under H. O. Mahoney, and under conveyances dated after Mahoney took possession and purportedly rescinded. The claim of innocent purchaser is made here for these. We need discuss this no further than to say that they each took free and clear of any claim of appellees which rested in parol, of which they had no notice. Obviously, if this were not a gift, their title is no better than that of H. O. Mahoney, as respects his right of rescission. They acquired whatever rights he had under the original contract. If no right of rescission existed in H. O. Mahoney, no legal title passed from appellees by virtue of any wrongful act of rescission by Mahoney. The character of their title in this respect depends directly upon his right to rescind, he not having the apparent legal title of record.

In view of another trial, we have not thought it advisable to discuss the evidence further than the above.

Many of the questions found in the briefs may not again arise, and to discuss many of these would be to indicate only what our holding might be on another appeal under entirely different facts.

Judgment reversed and cause remanded.