# COURT OF CRIMINAL APPEALS

## PD-0019-15, PD-0020-15
## PD-0021-15, PD-0022-15

FILED IN
COURT OF CRIMINAL APPEALS

November 2, 2015

ABEL ACOSTA, CLERK

*State of Texas, Appellant,*
*v.*
*Albert G. Hill, III, Appellee.*

On Discretionary Review from
Nos. 05-13-00421-CR, 05-13-00423-CR
05-13-00424-CR, and 05-13-00425-CR
Fifth Court of Appeals, Dallas

On Appeal from Nos. F11-00180, F11-00182,
F11-00183, and F11-00191
204th District Court, Dallas County

# Appellee's Reply Brief

**Michael Mowla**
**445 E. FM 1382 No. 3-718**
**Cedar Hill, Texas 75104**
**Phone: 972-795-2401**
**Fax: 972-692-6636**
**michael@mowlalaw.com**
**Texas Bar No. 24048680**
**Attorney for Appellee**
**and Lead Counsel**

**L.T. (Butch) Bradt**
**14090 S.W. Freeway # 300**
**Sugar Land, Texas 77478**
**Phone: 281-201-0700**
**Fax: 281-201-1202**
**ltbradt@flash.net**
**Texas Bar No. 0284160**
**Attorney for Appellee**

**George R. Milner III**
**2828 N. Harwood St. Suite 1950**
**Dallas, Texas 75201**
**Phone: 214-651-1121**
**Fax: 214-953-1366**
**ItsRainingII@aol.com**
**Texas Bar No. 00784611**
**Attorney for Appellee**

*ORAL ARGUMENT GRANTED*

# I. Table of Contents

I.     Table of Contents.................................................................................................2

II.    Table of Authorities.........................................................................................4

III.   Argument ..........................................................................................................6

**1.** The State makes various incorrect factual assertions......................................6

    **i.**     The State' factual contention that Appellee alleged prosecutorial misconduct "in an effort to avoid paying the $20 million dollar judgment" or "face a criminal trial" is incorrect. ....................................................................................6

    **ii.**    The State incorrectly asserts that the "State never stipulated to admissibility of Appellee's Exhibits" because the State: (1) stipulated to the authenticity of the exhibits; and (2) the stipulation as to the authenticity of the exhibits is a judicial admission by the State.  Thus, the documents attached to the *Motion to Dismiss*: (1) are conclusive upon the State; and (2) relieves Appellee's burden of proving the admitted facts. Thus, the State is barred from disputing the admitted facts...............................................................8

**2.** The State's claim that Appellee "apparently no longer seeks to assert his due process claim concerning lack of an impartial prosecutor" is without merit because Appellee specifically argues throughout his Brief that: (1) the government singled Appellee out for prosecution and has not proceeded against others similarly situated based on the type of conduct for which Appellee is charged; and (2) the government's discriminatory selection is invidious. A prosecutor who acts in a discriminatory or invidious manner and prosecutes for an improper purpose cannot also be an "impartial prosecutor." ........................12

**3.** The State presents no valid counter to Appellee's arguments that: (1) Appellee proffered evidence to the *Motion to Dismiss* alleging prosecutorial misconduct; (2) the trial court in its discretion determined that the proffered evidence was sufficient to entitle Appellee to a hearing; and (3) "some evidence" means evidence that constitutes a *colorable claim* of a constitutional violation that may prove the elements of a presumed selective prosecution claim, and not evidence that proves the

constitutional violation itself: (1) beyond a reasonable doubt, (2) by clear and convincing evidence, or (3) by a preponderance of the evidence. .....................................................................................21

**4.** Clarification of the Fifth Circuit standard, which is indeed the same standard ("colorable claim") that Appellee argues this Court should adopt.................................................................................25

**5.** Not only have nearly all of the federal circuit court of appeals adopted standards substantially similar to the standard that Appellee argues this Court should adopt, states have done so as well: that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to present a colorable claim of a constitutional violation, the defendant has attached "some evidence," and the trial court has discretion to conduct a hearing on the motion to dismiss. ........................................................26

IV.   Conclusion and Prayer.............................................................................30

V.   Certificate of Service ...............................................................................31

VI.   Certificate of Compliance with Tex. Rule App. Proc. 9.4 ............................32

## II. Table of Authorities

## Cases

*Blackledge v. Perry*, 417 U.S. 21 (1974) ....................................................14

*Bryant v. State*, 187 S.W.3d 397 (Tex. Crim. App. 2005)........................10

*Commonwealth v. Washington W.*, 928 N.E.2d 908 (Mass. 2010) .........27

*Commonwealth v. Washington W.*, 967 N.E.2d 615 (Mass. 2012) .........28

*Gawlik v. State*, 608 S.W.2d 671 (Tex. Crim. App. 1980) .....................22

*Green v. State*, 934 S.W.2d 92 (Tex. Crim. App. 1996).........................22

*Henderson v. Heyer-Schulte Corp.*, 600 S.W.2d 844 (Tex. App. Houston [1st Dist.] 1980, *writ ref'd n.r.e.*).................................................9

*Hollen v. State*, 87 S.W.3d 151 (Tex. App. Fort Worth 2002), *reversed on other grounds*, 117 S.W.3d 798 (Tex. Crim. App. 2003) .........................10

*M.J.R.'s Fare of Dallas, Inc. v. Permit and License Appeal Bd. of Dallas*, 823 S.W.2d 327 (Tex. App.-Dallas 1991, *writ den.*).........................10

*Mahoney v. Mahoney*, 103 S.W.2d 459 (Tex. Civ. App. Amarillo 1937, *writ ref.*) ...............................................................................................11

*Marshall v. Jerrico, Inc.*, 446 U.S. 238 (1980).....................................13

*Martin v. State*, 200 S.W.3d 635 (Tex. Crim. App. 2006) .....................10

*Matney v. State*, 99 S.W.3d 626 (Tex. App. Houston [1st Dist.] 2002) .................22

*Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692 (Tex. 1980) ..................................................................................................11

*Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App. Houston [14th Dist.]1991, *no writ*)...................................................................................10

*Porter v. Texas Dept. of Public Safety*, 712 S.W.2d 263 (Tex. App. San Antonio 1986, *no writ*) .....................................................................9

*Richardson v. State*, 831 So. 2d 799 (Fla. App. 2002) ...........................26

*State v. Ballard*, 752 A.2d 735 (N.J. Super. 2000) .................................29

*State v. LaMar*, 767 N.E.2d 166 (Ohio 2002)........................................28

*State v. Smith*, 703 A.2d 954 (N.J. Super. 1997) ...................................29

*State v. Staten*, 1998 Wash. App. LEXIS 869 (Wa. Ct. App. 1998) (unpublished opinion).................................................................................28

*United States v. Armstrong*, 517 U.S. 456 (1996) ......................................................22

*United States v. Brown*, 298 F.3d 392 (5th Cir. 2002) ...............................................15

*United States v. Cooks*, 52 F.3d 101 (5th Cir. 1995) ...................................................25

*United States v. Goodwin*, 457 U.S. 368 (1982)..........................................................15

*United States v. Johnson*, 577 F.2d 1304 (5th Cir. 1978).............................................25

*United States v. Meyer*, 810 F.2d 1242 (D.C. Cir. 1987) ............................................15

*United States v. Taylor*, 749 F.2d 1511 (11th Cir. 1985) (per curiam) ..................15

*Wayte v. United States*, 470 U.S. 598 (1985) ...............................................................22

*Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787 (1987)
................................................................................................................................14

**Other Authorities**

Black's Law Dictionary (7th ed. 1999) ........................................................... 14, 24

Concise Oxford American Thesaurus (2006) .................................................................24

West's Legal Thesaurus/Dictionary, Spec. Deluxe Ed. (1986)................................14

**Rules**

Tex. Rule App. Proc. 68.11 (2015)................................................................................32

Tex. Rule App. Proc. 9.4 (2015)....................................................................................33

Tex. Rule App. Proc. 9.5 (2015)....................................................................................32

Tex. Rule Evid. 803 (2013).............................................................................................10

Tex. Rule Evid. 902 (2013).............................................................................................10

**Constitutional Provisions**

U.S. Const. Amend. V.....................................................................................................23

U.S. Const. Amend. XIV ...............................................................................................23

**To The Honorable Judges of the Court of Criminal Appeals:**

Appellee Albert G. Hill, III respectfully submits this reply brief:

## III. Argument

### 1. The State makes various incorrect factual assertions

Throughout its brief, the State makes various incorrect assertions about the facts. This Reply Brief addresses the most pertinent incorrect assertions they go to: (1) the reason why Appellee filed the motion to dismiss; and (2) the admissibility of the documents attached to the *Motion to Dismiss*. A correct recitation of the facts, fully supported by record citations, is found in Appellee's Brief.

#### i. The State' factual contention that Appellee alleged prosecutorial misconduct "in an effort to avoid paying the $20 million dollar judgment" or "face a criminal trial" is incorrect.

The State alleges in its brief that "Hill alleges prosecutorial misconduct in an effort to avoid paying the $20 million judgment or facing a criminal trial." State's Br., 6. The State also claims that "In November 2012—while still challenging the $20 million federal judgment—Hill filed unsworn motions in his criminal cases seeking dismissal of the indictments or, alternatively, an "evidentiary hearing and discovery into the issues surrounding the District Attorney's decision to indict this case." State's Br., 6. And, the State contents, "[B]y this time, the DA's Office had dismissed the charges against Hill's wife." State's Br., 6.

First, Appellee was indicted on March 31, 2011. (F11-00180/05-13-00421-CR) (CR-180, 6, 427). After conducting an investigation, Appellee uncovered compelling circumstantial evidence that Lisa Blue, who at the time was involved in civil litigation against Appellee over a fee dispute, corruptly influenced Watkins, who in turn authorized obtaining the four indictments against Appellee. The factual basis for Appellee's claims are detailed in the Appellee's Brief. On December 7, 2010, Blue and her associated attorneys filed a complaint in federal court against Appellee and his wife, seeking to recover over $50 million in the litigation in federal court. (RR5, DX-1, 117-123, 139, 408). Then on March 31, 2011, about two weeks before the scheduled start of the fee dispute trial between Appellee and Blue, the indictments against Appellee and his wife were returned, and were made public on April 4, 2011. (RR5, DX-1, 141, 146-147; CR-180, 162; CR-182, 158; CR-183, 158; CR-191, 157).

Second, Appellee did not file the *Motion to Dismiss* until November 16, 2012, asserting that his constitutional rights to Due Process and Equal Protection were violated because, due to Blue's bribing and influence of Watkins, Appellee was: (1) selectively prosecuted; (2) vindictively prosecuted; and (3) deprived of his right to a disinterested prosecutor. (CR-180, 31-488).

Thus, the State's factual assertion that "Hill alleges prosecutorial misconduct in an effort to avoid paying the $20 million judgment..." has no basis in fact because

7

Appellee filed the *Motion to Dismiss* on November 16, 2012 and did so only after a detailed investigation. Further, the *Motion to Dismiss* was filed long after Appellant was indicted on March 31, 2011, which was two weeks before the start of the fee dispute, and even longer after Blue and her associated attorneys filed a complaint in federal court against Appellee and his wife, seeking to recover over $50 million on the settlement. (RR5, DX-1, 117-123, 139, 408). If Appellee filed the *Motion to Dismiss* merely to try avoid paying a judgment, he would have done so long before November 2012. And, it was Blue's greed and Watkins's corruptibility that brought on the *Motion to Dismiss*, not any action by Appellee.

Finally, the State provides no factual basis for its assertion that Appellee alleged prosecutorial misconduct "in an effort to avoid...facing a criminal trial." This is a mere conclusory statement due to the fact that Appellee dared to assert his constitutional rights to: (1) not be selectively prosecuted; and (2) a disinterested prosecutor.

> **ii. The State incorrectly asserts that the "State never stipulated to admissibility of Appellee's Exhibits" because the State: (1) stipulated to the authenticity of the exhibits; and (2) the stipulation as to the authenticity of the exhibits is a judicial admission by the State. Thus, the documents attached to the *Motion to Dismiss*: (1) are conclusive upon the State; and (2) relieves Appellee's burden of proving the admitted facts. Thus, the State is barred from disputing the admitted facts.**

The State asserts that, although Appellee claims that the State stipulated to the "authenticity and admissibility" of his attachments, the State "never stipulated to

8

admissibility," and that "the trial court admitted Hill's Exhibits 1-4 only "for record purposes." This is an irrelevant, "hair-splitting" argument, and is inconsequential and trivial. When the trial court asked the State, "any objection" to the admission of the exhibits, the State responded, "Not -- not for authenticity purposes, Your Honor," and "No authenticity objection, Your Honor." (RR4, 30-31).

It is axiomatic that all documents are hearsay. Further, before any document can be admitted as an exception under the hearsay rule, the party offering the document must show it is authentic. For instance, Texas Rule of Evidence 803(8) provides that public records are not excluded under the hearsay rule. To Qualify under Rule 803(8), the proponent must show that the document is authentic. *See Porter v. Texas Dept. of Public Safety*, 712 S.W.2d 263, 265 (Tex. App. San Antonio 1986, *no writ*); Tex. Rule Evid. 803(8) (2013); *see also Henderson v. Heyer-Schulte Corp.*, 600 S.W.2d 844, 850 (Tex. App. Houston [1st Dist.] 1980, *writ ref'd n.r.e.*) (Trial court properly excluded a document that a witness could not identify or authenticate). Thus, a document is authentic if a sponsoring witness vouches for its authenticity or if the document meets the requirements of self-authentication in Texas Rule of Evidence 902. *See* Tex. Rule Evid. 902 (2013).

The State stipulated to the authenticity of these documents. A stipulation "obviates the need for proof on [the] litigable issue." *Hollen v. State*, 87 S.W.3d

9

151, 155 (Tex. App. Fort Worth 2002), *reversed on other grounds*, 117 S.W.3d 798 (Tex. Crim. App. 2003); *see also M.J.R.'s Fare of Dallas, Inc. v. Permit and License Appeal Bd. of Dallas*, 823 S.W.2d 327, 330-331 (Tex. App.-Dallas 1991, *writ den.*) (When parties stipulate to certain facts and documentary evidence, "these stipulations **are binding upon the parties, the trial court, and the reviewing court**") (emphasis supplied) and *Perry v. Brooks*, 808 S.W.2d 227, 229 (Tex. App. Houston [14th Dist.]1991, *no writ*) ("Stipulations are conclusive as to the facts stipulated and to all matters necessarily included therein...As such, **stipulations enjoy equal dignity with judicial admissions**, which eliminate an adversary's necessity of proof and establish the admitted elements as a matter of law.) (emphasis supplied).

Not only did the State stipulate to the facts; the State **judicially admitted** the facts because when a party **stipulates** to evidence, it is a **judicial admission**, and there is no longer a need for the moving party to provide proof of the facts stipulated to. *See Bryant v. State*, 187 S.W.3d 397 (Tex. Crim. App. 2005) and *Martin v. State*, 200 S.W.3d 635 (Tex. Crim. App. 2006). A judicial admission is "**conclusive upon the party making it**, and it **relieves the opposing party's burden of proving the admitted fact**, and **bars the admitting party from disputing it**." *Mendoza v. Fid. & Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692,

10

694 (Tex. 1980) (emphasis supplied); *see also Mahoney v. Mahoney*, 103 S.W.2d 459, 462 (Tex. Civ. App. Amarillo 1937, *writ ref.*).

As a result, there is no basis in fact or law for the State's assertion that the "State never stipulated to admissibility of Appellee's Exhibits" because the State: (1) stipulated to the authenticity of the exhibits; and (2) the stipulation as to the authenticity of the exhibits is a judicial admission by the State. Thus, the documents attached to the *Motion to Dismiss*: (1) are conclusive upon the State; (2) relieve Appellee's burden of proving the admitted facts; and (3) because of the conclusiveness and removal of Appellee's burden, bars the State now from disputing the admitted facts.

**2. The State's claim that Appellee "apparently no longer seeks to assert his due process claim concerning lack of an impartial prosecutor" is without merit because Appellee specifically argues throughout his Brief that: (1) the government singled Appellee out for prosecution and has not proceeded against others similarly situated based on the type of conduct for which Appellee is charged; and (2) the government's discriminatory selection is invidious. A prosecutor who acts in a discriminatory or invidious manner and prosecutes for an improper purpose cannot also be an "impartial prosecutor."**

In its brief, the State claims "[O]n appeal to this Court, Hill apparently no longer seeks to assert his due process claim concerning lack of an impartial prosecutor. His petition for discretionary review and merits brief mention this claim only in detailing the procedural history of the case. As a result, the State will address only the claims for selective and vindictive prosecution." State's Br., 24-25. As the following will show, the State's arguments are without merit because Appellee in fact has not abandoned any arguments because a prosecutor who acts in a discriminatory or invidious manner and prosecutes for an improper purpose cannot also be an "impartial prosecutor.

First, Appellee argues and has shown that he met the standard of establishing a prima facie case of selective prosecution in violation of the Fifth and Fourteenth Amendments. Appellee was entitled to a hearing under the "presumption of prosecutorial vindictiveness" method because he provided "some evidence" that shows: (1) the government Appellee out for prosecution and has not proceeded against others similarly situated based on the type of conduct for which Appellee

was charged; and (2) the government's discriminatory selection is invidious. This is all Appellee is required to show for the burden to shift to the State to justify the discriminatory treatment. The State not only failed to do so, but the evidence in fact showed the invidious and criminal nature of the State's behavior.

Second, the State apparently concludes that Appellee's right to an impartial prosecutor is divorced from his proven claims of selective and vindictive prosecution ("As a result, the State will address only the claims for selective and vindictive prosecution," State's Br., 24-25). This is an incorrect conclusion. The State clearly misunderstands the meaning of the phrase "impartial prosecutor."

The issue of what constitutes an "impartial" prosecutor requires explanation. The opposite of an "impartial prosecutor" is a "partial prosecutor." "Impartial" means "unbiased; disinterested." Black's Law Dictionary, 7th ed., 755 (1999). "Partial" means "prejudiced, unfair, or involved." West's Legal Thesaurus/Dictionary, Spec. Deluxe Ed., 559 (1986). A prosecutor is not "partial" merely because the prosecutor zealously seeks a conviction. In fact, "[I]n an adversary system, [prosecutors] are necessarily permitted to be zealous in their enforcement of the law..." *Marshall v. Jerrico, Inc.*, 446 U.S. 238, 248 (1980). As a result, "partiality" deals not with a zeal to prosecute, but with a situation where the **personal interests** of the prosecutor cause a structural conflict of interest. *Young*

*v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 807-808 and n.18 (1987).

As the Supreme Court of the United States observed in *Young*, *see id.* at n.18,

> "Prosecutors may on occasion be overzealous and become overly committed to obtaining a conviction. That problem, however, is personal, not structural. As the Court of Appeals for the Sixth Circuit said in disapproving the appointment of an interested contempt prosecutor in *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 705 (1985)...such overzealousness "does not have its roots in a conflict of interest. When it manifests itself the courts deal with it on a case-by-case basis as an aberration. This is quite different from approving a practice which would permit the appointment of prosecutors whose undivided loyalty is pledged to a party interested only in a conviction."

Thus, a **prosecutor's personal interest or partiality** may present "an actual conflict of interest if its potential for misconduct is deemed intolerable." *Young*, 481 U.S. at 807 n.18.

Contrary to the State's apparent assertion that Appellee's right to an impartial prosecutor is divorced from his proven claims of selective and vindictive prosecution, a prosecutor who acts in an invidious, selective, or vindictive manner is clearly not an "impartial" prosecutor. A prosecutor acts in a "vindictive" manner and in violation of the Due Process Clause where the prosecutor uses criminal charges in an attempt to penalize a defendant's valid exercise of constitutional or statutory rights. *Blackledge v. Perry*, 417 U.S. 21, 27-28 (1974). To prevail on a claim of vindictive prosecution, a defendant must show either actual vindictiveness or facts sufficient to give rise to a rebuttable presumption of

vindictiveness. *United States v. Goodwin*, 457 U.S. 368, 373, 380-381 (1982) (A presumption of vindictiveness is appropriate where "reasonable likelihood" that vindictiveness exists on other grounds); *see also United States v. Brown*, 298 F.3d 392, 405-406 (5th Cir. 2002). A presumption of vindictiveness typically arises when a defendant is reindicted following a trial and the charging decision is changed. *Goodwin*, 457 U.S. at 381; *see also United States v. Taylor*, 749 F.2d 1511, 1513 (11th Cir. 1985) (per curiam) (A presumption of vindictiveness exists because the prosecutor brought a charge carrying potentially greater sentence than the original charge because circumstances demonstrated either actual vindictiveness or realistic fear of vindictiveness); see also *United States v. Meyer*, 810 F.2d 1242, 1246-1247 (D.C. Cir. 1987) (Presumption of vindictiveness exists because the superseding indictment was filed for the purpose of punishing the defendant who had invoked right to trial by jury).

Appellee has not asserted claims of vindictive prosecution in a manner as such claims are normally made. Thus, the State's arguments that Appellee "failed to establish vindictive prosecution" are irrelevant to this case. *See* State's Br., 30-34.

Rather, Appellee clearly showed a claim of selective and invidious prosecution in violation of the Fifth and Fourteenth Amendments. Appellee was entitled to a hearing under the "presumption of prosecutorial vindictiveness" standard because he proffered "some evidence" that shows: (1) Watkins singled out

15

Appellee for prosecution and has not proceeded against others similarly situated based on the type of conduct for which Appellee was charged; and (2) the government's discriminatory selection is invidious.

The State argues that the only evidence presented regarding the selective nature of the prosecution is that **Stephanie Martin** did not admit during her testimony that Appellee's prosecution was "unprecedented," but instead was unprecedented as it "related only to her caseload" State's Br., 17). The State's argument is **incorrect** and does not accurately reflect the record. Although Martin testified as to her caseload, the first assistant district attorney (Moore) and Martin's direct supervisor (Strittmatter) also testified also that they are not aware of any other instance when a case similar to Appellee's was prosecuted.

As support for its contention, the State cites page 155 of volume 4 of the Reporter's Record. State's Br., 17. The entire exchange on this issue on page 155 of volume 4 is as follows:

> **Appellee's counsel:** Now, Ms. Martin, you testified, if I just heard correctly, that you had precedent. You, in fact, have never presented a case to the Grand Jury, mortgage fraud case, where the loan was funded, it was paid as expected, repaid in full and there was no complaint from the bank. You've never presented a case like that to the Grand Jury before the Hills.
>
> **THE COURT:** Is that a question?
>
> **Appellee's counsel:** Is that right?
>
> **Stephanie Martin:** I'm trying to think. I don't think so.

16

**Appellee's counsel:** Yes. This case, in that respect, was unprecedented?

**Stephanie Martin:** Where the loan was funded?

**Appellee's counsel:** Funded, repaid, no complaint from the bank.

**Stephanie Martin:** Right. Just like a shoplifting case where you take all the groceries out to the car, put them in the car and you get caught and you give it back.

**Appellee's counsel:** Has --

**Stephanie Martin:** You're right.

Stephanie Martin, who was responsible for prosecuting these cases, states that she never even presented such a case to the grand jury.

Then on pages 49-50 of volume 4, the following exchange took place between Appellee's counsel and Terri Moore:

**Appellee's counsel:** Do -- are you aware of any cases in the office's history, during your tenure or otherwise, where the allegation was someone had made a false statement in a loan that was funded, paid as expected, repaid in full, and there was no complaint from the lender? Any cases like that?

**Terri Moore:** Specifically, those limited facts? No.

Thus, the then-first assistant to Watkins since January 1, 2007 stated that she is not aware of any similar cases being prosecuted.

Finally, on pages 126-127 and 129 of volume 4, the following exchange took place between Appellee's counsel and Donna Strittmatter, the supervisor of the unit that prosecutes mortgage fraud cases:

**Appellee's counsel:** Okay. Are you aware of a single instance ever that the Dallas County DA's office has indicted a mortgage fraud case where the loan was fully collateralized, paid as expected, and repaid in full and there was no complaint from the bank, but it was indicted any way?

**Donna Strittmatter:** I am not aware because I have not been the mortgage fraud prosecutor.

**Appellee's counsel:** Well, you've been the supervisor of the unit that prosecutes mortgage frauds.

**Donna Strittmatter:** I'm certainly aware of us prosecuting instances where the person did nothing but submit the false loan application, didn't even get the money, and we indicted and prosecuted those individuals.

**Appellee's counsel:** I understand, ma'am. That -- and you're talking about an effort somebody was making to obtain money and, of course, we don't know whether they would have defaulted or stolen the money. I'm asking about situations, specifically, in which -- of -- that you're aware, ever in the history of this office, in which someone's been prosecuted for mortgage fraud where the loan was collateralized, was repaid as expected, repaid in full, and the bank filed no complaint.

**Donna Strittmatter:** I don't know, but that doesn't mean it hasn't happened.

....

**Appellee's counsel:** All right. And you're not aware, as you sit here, of any case HUD's ever referred to your office in which the loan was collateralized, paid as expected, HUD didn't lose any money?

18

**Donna Strittmatter:** They may have. I can't say that that is not true.

**Appellee's counsel:** Just asking if you're aware of any.

**Donna Strittmatter:** I can't give you a defendant's name off the top of my head.

The most damning aspect about Strittmatter's testimony was that like Martin and Moore, Strittmatter was fully aware of what the nature of this hearing was and yet Strittmatter could not manage to name a single other person who was prosecuted under remotely similar facts. **The reasons for this are clear: (1) there never was another prosecution under remotely similar facts (selective prosecution); and (2) Watkins pushed through the indictments against Appellee solely as a favor for his friend and fellow Democratic Party operative, Blue, who "just happened" to be involved in a fee dispute against Appellee which Blue sought over $50 million for about six months of work (invidious reason).** Thus, no evidence was presented by the State showing that: (1) a single other person with facts similar to Appellee's case was prosecuted; or (2) the reasons for the prosecution were proper. In fact, Appellee established just the opposite: that no other person had ever been prosecuted under similar facts, and the reasons for the prosecution were indeed invidious.

The State also claims that Appellee provided "no evidence" to support the fact that prosecutor Deborah Smith communicated her "concerns" about the charges. This allegation goes to the State's desire for this Court to hold that a movant in a

selective or invidious prosecution claim must prove up the allegation by way of evidence attached to the motion to dismiss before the movant is entitled to a hearing. However, as detailed in the Appellee's Brief, this is not the correct standard. For instance, Appellee proffered evidence that on October 12, 2012, Appellee's counsel met with Smith, to whom the case had then been reassigned. (RR4, 216-218; CR-180-Supp-Aug02, 92). During this meeting, Appellee proffered to the trial court that Smith apologized for how the State handled the cases against Appellee and his wife, indicated that she was conducting "due diligence" interviews of witnesses, and stated that she would recommend dismissing certain or all of the charges against both Appellee and his wife. *Id.* (the email from Smith to Appellee's counsel indicates that Smith was not personally authorized to dismiss the cases, but that she would submit her recommendation as to two of the four pending cases, CR1, 487). Later that same day, the District Attorney's Office moved to dismiss all charges against Erin Hill (Appellee's wife) "in the interest of justice." *Id.*

**3. The State presents no valid counter to Appellee's arguments that: (1) Appellee proffered evidence to the *Motion to Dismiss* alleging prosecutorial misconduct; (2) the trial court in its discretion determined that the proffered evidence was sufficient to entitle Appellee to a hearing; and (3) "some evidence" means evidence that constitutes a *colorable claim* of a constitutional violation that may prove the elements of a presumed selective prosecution claim, and not evidence that proves the constitutional violation itself: (1) beyond a reasonable doubt, (2) by clear and convincing evidence, or (3) by a preponderance of the evidence.**

The issues in this case are whether: (1) Appellee proffered evidence to the Motion to Dismiss alleging prosecutorial misconduct; (2) the trial court in its discretion determined that the proffered evidence was sufficient to entitle Appellee to a hearing; and (3) "some evidence" means evidence that constitutes a colorable claim of a constitutional violation that may prove the elements of a presumed selective prosecution claim. The State snipes at certain parts of Appellee's arguments as though it is possible for them to be argued in a vacuum, such as the State's contention that the "only evidence" presented regarding the selective nature of the prosecution is that Martin did not admit during her testimony that Appellee's prosecution was "unprecedented," but instead was unprecedented as it "related only to her caseload, when in fact the first assistant district attorney (Moore) and Martin's direct supervisor (Strittmatter) also testified also that they are not aware of any other instance when a case similar to Appellee's was prosecuted. However, none of the State's arguments sufficiently counter the conclusion that Appellee met the burden set forth by the Supreme Court in *United States v. Armstrong*, 517 U.S. 456, 463

(1996). Appellee proffered with the *Motion to Dismiss* not just "some evidence," but rather "exceptionally clear evidence" proving that Watkins: (1) singled Appellee out for prosecution and did not proceed against others similarly situated based on the type of conduct for which Appellee was charged; and (2) acted in an invidious manner. *See also Green v. State*, 934 S.W.2d 92, 103 (Tex. Crim. App. 1996); *Matney v. State*, 99 S.W.3d 626, 628 (Tex. App. Houston [1st Dist.] 2002); *Gawlik v. State*, 608 S.W.2d 671, 673 (Tex. Crim. App. 1980); U.S. Const. Amend. V; U.S. Const. Amend. XIV.

The State would like this Court to believe that a prosecutor's decision to prosecute amounts to a totally unfettered discretion to prosecute alleged violations of criminal statutes, but this is simply not the case. *Wayte v. United States*, 470 U.S. 598, 608 (1985). If a person presents "some evidence" to a trial court that tends to show a colorable claim of a discriminatory or other improper purpose for a prosecution, the trial court is well within its rights to conduct a hearing on the matter. Armstrong, 517 U.S. at 465.

In *Armstrong*, the Supreme Court does not clearly define what constitutes "some evidence." However, it appears that the Supreme Court holds that "some evidence" means evidence that provides a **colorable basis** to show that the defendant can prove the two elements of a selective prosecution claim. Those elements are: (1) the government singled out the defendant for prosecution and has not proceeded

22

against others similarly situated based on the type of conduct for which the defendant is charged; and (2) the government's discriminatory selection is invidious and not for a proper purpose.

As Appellee details in the Appellee's Brief, a "colorable claim" is one that is "plausible, credible, or conceivable," or one that is "legitimate and that may reasonably be asserted, given the facts presented and the current law." Concise Oxford American Thesaurus, 149 (2006); Black's Law Dictionary, 240 (7th ed. 1999). "Exceptionally clear evidence" is evidence that is "unusually obvious, plain, evident, and intelligible." Concise Oxford American Thesaurus, 138, 292 (2006). Another legitimate definition of a "colorable claim" is where the defendant presents "some evidence" tending to show a disparate treatment and discriminatory intent that entails a **"nonfrivolous showing based on more than conclusory allegations**." *United States v. Armstrong*, 48 F.3d 1508, 1512 (9th Cir. 1995) (emphasis supplied).

Contrary to the State's contention that Appellee did not identify specific portions of the proffered evidence to show that Appellee proffered "some evidence" that provides a colorable basis to show that the defendant can prove the two elements of a selective prosecution claim, Appellee attached and identified the following to the *Motion to Dismiss*: (1) Hill Jr.'s February 2010 complaint to the Dallas District Attorney's office, (2) pleadings from other proceedings and excerpts from Watkins's campaign finance reports, (3) email exchanges among attorneys in the fee litigation

between Blue and Appellee, (4) Blue's telephone records, (5) a log of text messages between Blue, Watkins, and his assistant, (6) announcements about the SMU scholarship funded by Blue and about Watkins's hiring of Blue to help in unrelated litigation, (7) a printout of a 2007 Texas Lawyer article about the district attorney's office's grand jury policy, (8) Smith's email about her reassignment, (9) excerpts from transcripts in the litigation between Blue and Appellee, (10) deposition testimony from Blue in the litigation between Blue and Appellee in which Blue testified to receiving two phone calls from Watkins about the indictments of the Appellee and his wife, and (11) deposition testimony from Malouf (Blue's co-counsel in the litigation between Blue and Appellee), who testified to overhearing one of those conversations. *See* CR-180, 68-488.

Therefore, it is clear that: (1) Appellee proffered evidence to the Motion to Dismiss alleging prosecutorial misconduct; (2) the trial court in its discretion determined that the proffered evidence was sufficient to entitle Appellee to a hearing; and (3) "some evidence" means evidence that constitutes a colorable claim of a constitutional violation that may prove the elements of a presumed selective prosecution claim, and not evidence that proves the constitutional violation itself: (1) beyond a reasonable doubt, (2) by clear and convincing evidence, or (3) by a preponderance of the evidence. The State presents no valid counterarguments against these conclusions or facts rebutting the facts cited by Appellee.

24

**4. Clarification of the Fifth Circuit standard, which is indeed the same standard ("colorable claim") that Appellee argues this Court should adopt.**

In the Appellee's Brief, Appellee noted that the Fifth Circuit in *United States v. Johnson*, 577 F.2d 1304, 1309 (5th Cir. 1978) held that to obtain a discovery hearing on a claim of prosecutorial misconduct, a defendant must first make a *prima facie* showing that the government acted inappropriately. Appellee disagreed with the standard in Johnson, but still argued that the analysis for his case does not change because he attached "some evidence" showing a constitutional violation.

However, in *United States v. Cooks*, 52 F.3d 101, 105 (5th Cir. 1995), the Fifth Circuit in fact held that in order to obtain discovery and a hearing, a movant must make a **colorable claim** for both elements of selective prosecution. In *Cooks*, the court held that the defendant, a black man, failed to establish that the government prosecuted him in order to subject him to high penalties for cocaine-base offenses. *Id*. at 105. The defendant argued that he was entitled to a hearing by attaching a report stating that minority arrests for drug offenses were now ten times greater than in past years and statistics detailing that the majority of those arrested for cocaine base offenses are black. *Id*. The Fifth Circuit held that this evidence failed to give rise to a **"colorable claim"** that he was selectively prosecuted.

**5. Not only have nearly all of the federal circuit court of appeals adopted standards substantially similar to the standard that Appellee argues this Court should adopt, states have done so as well: that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to present a colorable claim of a constitutional violation, the defendant has attached "some evidence," and the trial court has discretion to conduct a hearing on the motion to dismiss.**

The State objects to Appellee's arguments that nearly all the federal circuit court of appeals adopted standards substantially similar to the standard that Appellee asks this Court to adopt. However, many states have also adopted similar standards: that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to present a colorable claim of a constitutional violation, the defendant has attached "some evidence," and the trial court has discretion to conduct a hearing on the motion to dismiss:

**Florida**: in *Richardson v. State*, 831 So. 2d 799 (Fla. App. 2002), the defendant alleged that he was selectively prosecuted for drug-trafficking under the Florida RICO statute because he was selectively targeted for a wiretap as a result of his race. As evidence in support of a hearing, the defendant attached documents supporting the following contentions: (1) all five cases involving drug wiretaps that were being defended by the public defender involved minority defendants; (2) over the past three years, the public defender had not represented a white person in a drug wiretap case; (3) reports issued by the state attorney's office did not reflect any white

26

drug wiretap target since 1992; (4) a printout from the public defender for the last ten years reflected that of the 1,848 drug trafficking cases handled by the public defender, only 404 were white and did not involve wiretaps; and (5) the police were not able to identify any cases that involved an initial wiretap of a nonminority target.

The court denied the motion for a hearing and requested discovery because it is not enough for a defendant to submit statistical evidence that a prosecution tends to affect a particular group; rather, the statistics must address "the critical issue of whether that particular group was treated differently than a similarly-situated group." Further, "a trial court has broad discretion in ruling on discovery matters." As a result, the defendant **failed to establish a "colorable basis" for a claim of selective prosecution** sufficient to entitle him to the requested discovery. *Id*. at 802 (emphasis supplied).

**Massachusetts:** in *Commonwealth v. Washington W*., 928 N.E.2d 908 (Mass. 2010), a fifteen-year-old boy with Asperger's Syndrome was accused of having sexual encounters with a thirteen-year-old boy also with Asperger's Syndrome. *Id*. at 910. Although the court affirmed the prosecutor's "wide discretion" in deciding whether to press charges, presuming the prosecutor's decision was made in good faith, the court also affirmed a limited version of a discovery order granted to the child to pursue a selective prosecution claim based on a minimal (colorable) showing that the child may have been prosecuted only because of the same-sex nature of the

27

case. When the government ultimately failed to produce the discovery even under a protective order and even though the government conceded that the discovery contained no any personal or sensitive information, the trial court found that the government's "egregious" conduct "gives rise to a determination of presumptive prejudice and warrants dismissal." The Supreme Court of Massachusetts affirmed this ruling in *Commonwealth v. Washington W.*, 967 N.E.2d 615 (Mass. 2012).

**Ohio:** In *State v. LaMar*, 767 N.E.2d 166 (Ohio 2002), the court ruled that the defendant failed to present credible evidence showing the possibility of selective prosecution that would entitle him to a hearing. Although the court did not use the phrase "colorable," the implication from *LaMar* clearly is that alleging only that he was the only person accused of murder during a prison riot who was prosecuted under the death penalty statute because he is black does not amount to credible evidence, especially where at least three of the other four defendants are also black and were not prosecuted under the death penalty statute. *Id.* at 187-188. The court also points out that two years earlier, it affirmed the convictions of a white inmate who received the death penalty for murders committed during the riot. *Id.* at 188-189.

**Washington:** in *State v. Staten*, 1998 Wash. App. LEXIS 869 (Wash. Ct. App. 1998) (unpublished opinion), although the court did not use the phrase "colorable claim," it did hold that a defendant seeking discovery on a selective-

28

prosecution claim must make an "initial credible showing" of a constitutional violation by attaching "some evidence tending to show the elements of a selective prosecution claim." Here, the defendant attached only "anecdotal evidence" showing that while blacks make up only five percent of the population of the county, they account for 77 percent of the defendants facing "persistent offender allegations" (three-strikes law). *Id*. at *8-9. Such statistical evidence of the disproportionate effect of a law on a particular group of individuals, without more, is not sufficient, and there must be some evidence that similarly situated defendants of other races could have been prosecuted for a third strike but were not. *Id*. at *9-10.

**New Jersey:** in *State v. Ballard*, 752 A.2d 735 (N.J. Super. 2000), in citing *State v. Smith*, 703 A.2d 954 (N.J. Super. 1997) and *Armstrong*, the New Jersey Appellate Division held that discovery relating to a defendant's claim of selective enforcement "is permitted only when there is a colorable claim" of a constitutional violation such as selective enforcement. *Id*. at 738. The court held that the defendant made the "threshold showing" of a "colorable claim" of a constitutional violation. The court first noted that "discovery is appropriate if it will lead to relevant and material information. *Id*. at 739. The court found that the defendant (nonwhite) attached sufficient evidence to make a threshold showing of a colorable claim that police officers were racially profiling in enforcing motor vehicle

laws because the evidence showed that in the area where the stops occurred, blacks and Hispanics were several times more likely to be stopped than Caucasians.

Appellee has shown through the holdings of five other states agree with his argument that so long as a defendant attaches a proffer of evidence to a motion to dismiss due to prosecutorial misconduct that the trial court in its discretion determines to present a colorable claim of a constitutional violation, the defendant has attached "some evidence," and the trial court has discretion to conduct a hearing on the motion to dismiss.

## IV. Conclusion and Prayer

For the reasons stated in the Opening Brief and this Rely Brief, Appellee respectfully prays that this Court reverse the judgment and opinion of the Court of Appeals, find that Appellee provided "some evidence" constituting a colorable claim that allowed the trial court to exercise its discretion to order a hearing, and affirm the trial court's *Order Granting Motion to Dismiss*.

Respectfully submitted,

George R. Milner III
Milner Finn Price
2828 N. Harwood St. Suite 1950
Dallas, Texas 75201
Phone: 214-651-1121
Fax: 214-953-1366
ItsRainingII@aol.com
Texas Bar No. 00784611

Leonard Thomas (Butch) Bradt
14090 Southwest Freeway Suite 300
Sugar Land, TX 77478
Phone: 281-201-0700
Fax: 281-201-1202
ltbradt@flash.net
Texas Bar No. 02841600
Attorney for Appellee

Michael Mowla
P.O. Box 868
Cedar Hill, Texas 75106
Phone: 972-795-2401
Fax: 972-692-6636
michael@mowlalaw.com
Texas Bar No. 24048680
Attorneys for Appellee

**/s/ Michael Mowla**
By: Michael Mowla

## V. Certificate of Service

I certify that on November 1, 2015, a true and correct copy of this document was served on Chad Baruch by email to chad@jtlaw.com, on Lisa McMinn, the State Prosecuting Attorney, by email to Lisa.McMinn@spa.texas.gov, and on John Messinger, Assistant State Prosecuting Attorney, by email to john.messinger@spa.state.tx.us. *See* Tex. Rule App. Proc. 9.5 (2015) and Tex. Rule App. Proc. 68.11 (2015).

**/s/ Michael Mowla**
By: Michael Mowla

**VI. Certificate of Compliance with Tex. Rule App. Proc. 9.4**

This certifies that this document complies with the type-volume limitations because this document is computer-generated and does not exceed 7,500 words. Using the word-count feature of Microsoft Word, the undersigned certifies that this document contains 5,898 words in the document *except* in the following sections: caption, identity of parties and counsel, table of contents, table of authorities, statement of the case and jurisdiction, statement regarding oral argument, statement of issues or questions presented, signature, proof of service, certification, certificate of compliance, and appendix. This document also complies with the typeface requirements because it has been prepared in a proportionally-spaced typeface using 14-point font. *See* Tex. Rule App. Proc. 9.4 (2015).

**/s/ Michael Mowla**
By: Michael Mowla